## CIRCUIT COURT OF GREENE COUNTY

William Morris
and Arbutus Morris,
individually and
as administratrix
of the Estate of
Edward Morris

v.

Travelers Indemnity Co.

July 19, 1993

Case No. 1928

BY JUDGE JAY T. SWETT

The Travelers Indemnity Company has demurred to the "Amended Complaint" in which the plaintiff William Morris seeks declaratory relief regarding insurance coverage under a policy issued by Travelers Indemnity Company.[1] The matter has been briefed and argued. Because the procedural history of this case is confusing, a brief statement of its history is appropriate.

### Procedural History

This declaratory judgment action was filed in the Circuit Court of Greene County on April 20, 1992, against Travelers Indemnity Company. Travelers removed the case to the United States District Court for the Western District of Virginia on May 22, 1992. On July 29, 1992, Arbutus Morris, wife of the late Edward Morris, intervened and

---

[1] An amended complaint is the plaintiff's operative pleading as this case was before the United States District Court for the Western District of Virginia at the time the amended complaint was filed. The defendant's demurrer was filed after the matter was remanded to the Circuit Court of Greene County.

became a party in her individual capacity as well as the Administratrix of the Estate of Edward Morris. On October 14, 1992, William Morris was permitted to file an amended complaint in federal court. In his amended complaint, William Morris referred to a personal injury action filed on November 22, 1991, in the Circuit Court for Greene County in which William Morris seeks damages against the Estate of Edward Morris for injuries received on February 11, 1991, when he was shot by Edward Morris. The amended complain seeks a determination of whether there is liability insurance coverage for the Estate of Edward Morris and whether Travelers would be obligated to pay for any damages recovered by William Morris against the Edward Morris Estate. The action was remanded from the United States District Court to the Circuit Court of Greene County without a resolution on the merits.[2]

### Statement of Facts

The plaintiff's amended complaint incorporates by reference the amended motion for judgment filed in the case of *William Morris v. Arbutus Morris, Administratrix of the Estate of Edward Morris*, Law No. 1208, pending in the Circuit Court of the County of Greene. The amended complaint incorporates the Travelers insurance policy which William Morris contends provided coverage to Edward Morris at the time of the shooting.

The facts as pleaded by William Morris are that on February 11, 1991, William Morris, the Sheriff of Greene County, and a deputy accompanied Mrs. Arbutus Morris to her residence to recover her car. She had left the car there the prior evening after a heated dispute with her husband, Edward Morris.[4] When Sheriff Morris, the deputy, and Mrs. Morris arrived at the Edward Morris residence, Edward Morris was inside armed with a shotgun. Sometime after the three arrived, Edward Morris fired the shotgun "wildly" outside the residence strik-

---

[2] The United States District Court declined to exercise jurisdiction pursuant to 28 U.S.C. § 2201. Relying on *Mitcheson v. Harris*, 955 F.2d. 235 (4th Cir. 1992), the federal court concluded that it would be preferable for this court to resolve the coverage question since the underlying personal injury case was also pending in this court.

[4] The fact that the plaintiff, William Morris, has the same last name as Arbutus Morris and her deceased husband, Edward Morris, is coincidental.

ing Sheriff Morris in the upper left shoulder and on the left side of his face. Edward Morris was then killed by return fire from the deputy.

In Count I of the Amended Motion for Judgment, Sheriff Morris contends that the wild firing of the shotgun was done "consciously in disregard" of Sheriff Morris' rights or was done "with a reckless indifference to the consequences" to Sheriff Morris and that Edward Morris should have realized "from his knowledge of existing circumstances and conditions that there was a strong probability that his conduct might result in injury to another." Sheriff Morris describes Count I as an action for "willful and wanton negligence." Count II alleges the same facts but seeks recovery under a theory of "gross negligence."[5] In both counts, the plaintiff asserts that the discharge of the shotgun by Edward Morris "was an accident."

### Decision

By filing a demurrer, the defendant challenges whether the plaintiff's amended complaint which incorporates the amended motion for judgment filed in *Morris v. Morris* states a cause of action upon which relief can be granted. *Grossman v. Saunders*, 237 Va. 113 (1989). The defendant's demurrer admits all well-pleaded facts, as well as facts that are fairly inferred or implied from the facts that are alleged. *Duggin v. Adams*, 234 Va. 221 (1987). However, the court is not bound by conclusory allegations when the issue to be decided involves a mixed question of fact and law. *Russo v. White*, 241 Va. 23, 28 (1991). Thus, the fact that the plaintiff alleges that the shooting of Sheriff Morris was "an accident" is not of itself sufficient to overrule the defendant's demurrer.

The thrust of Travelers' demurrer is that the factual allegations in Count I of the amended motion for judgment in *Morris v. Morris* allege an intentional tort of assault and battery, and since the cause of action is for assault and battery, the claim falls outside the provisions of the Travelers policy issued to Edward Morris. Travelers relies on *Norman v. Insurance Co. of North America*, 218 Va. 718 (1978), and *Bannister v. Mitchell*, 127 Va. 578 (1920). While language in both cases tends to support Travelers' demurrer, the holdings of the cases do not dictate

---

[5] Count II was previously dismissed for reasons unrelated to the insurance coverage question involving Count I. The demurrer only involves Count I, the count alleging willful and wanton negligence.

the result here. *Norman v. Insurance Company, supra*, involved an insurance coverage question similar to the one presented here. Norman was the owner of rental property. While attempting to forcibly evict a tenant, an argument developed and Norman fired a pistol injuring the tenant. The tenant filed a civil assault and battery action against Norman and recovered a verdict. When his insurer refused to pay the judgment, Norman filed suit. In his pleading against his insurer, Norman alleged that when he fired his pistol, he did so without aiming it, that he fired the pistol at the floor but that the bullet ricocheted striking the tenant. Norman's policy obligated the carrier to pay legal obligations of Norman arising out of "bodily injury . . . caused by an occurrence . . . ." An occurrence was defined a "an accident . . . which results . . . in bodily injury . . . neither expected or intended from the standpoint of the Insured." 218 Va. at 720.

Norman argued that the allegations in his complaint alleging that he did not aim the pistol at the tenant when it was fired meant that the claim was covered since he "neither expected nor intended the injury to the tenant." The Supreme Court rejected this argument on the ground that the jury verdict and the punitive damage award against Norman in the civil suit established that Norman had committed an intentional assault and battery in the shooting of the tenant. The Court found that Norman was collaterally estopped from relitigating the question of whether the shooting was or was not an intentional assault and battery. Since that matter had already been resolved, the Court held as a matter of law that the shooting was not an accident within the meaning of the insurance policy. 218 Va. 723–725.

*Bannister v. Mitchell, supra*, also involved a civil action for assault and battery. Appealing a verdict for the plaintiff, the defendant contended that when he cut the plaintiff with a knife across her cheek and ear, he was trying to cut the plaintiff's brother and that the plaintiff "got in the way." 127 at 584. The court held that a specific intent to injure a particular individual was not a necessary element in a civil action for assault and battery where the act constitutes a wanton, reckless, and dangerous act which could result in injury to one of a member in a group "such as shooting into a crowd." *Id.*

What distinguishes *Norman* and *Bannister* from this case is that Count I does not allege a cause of action for assault and battery. The plaintiff contends that the wild shooting by Edward Morris constituted willful and wanton negligence. There can no longer be any serious

question that Virginia recognizes such a tort and distinguishes it from an action for negligence, an action for gross negligence, and an action for intentional misconduct (or assault and battery). *Infant C. v. Boy Scouts of America*, 239 Va. 572, 582–583 (1990); *Griffin v. Shively*, 227 Va. 317, 321–322 (1984). The distinction between willful and wanton negligence and an intentional assault and battery (or intentional misconduct) is as follows:

> There is a substantial difference between willful and wanton conduct, on the one hand, and intentional misconduct on the other. An actor guilty of intentional misconduct must intend to cause harm to another. *See, e.g., Johnson v. Insurance Co. of No. America*, 232 Va. 340, 350 S.E.2d 616 (1986) (actor understood nature and consequences of his conduct and had purpose and volition to cause injury). An actor guilty of willful and wanton conduct intends his act, but not the resulting harm. *See, e.g., [Booth v. Robertson*, 236 Va. 269 (1988)]* (drunken driver guilty of willful and wanton conduct even though lacking ill-will, malice, or intention to cause harm). 239 Va. at 582.

Here, Sheriff Morris does not contend that Edward Morris intended to shoot him at the time Sheriff Morris was shot. Sheriff Morris contends that the shooting was done "wildly." While the willful component of the cause of action means that it is alleged that the conduct of the firing of the gun was intentional, it does not follow that Edward Morris intended to shoot Sheriff Morris causing him bodily injury. [6]

Characterizing the plaintiff's cause of action in Count I as a claim for *willful and wanton negligence does not resolve the matter.* The issue here is one of insurance coverage and more particularly whether the facts set forth in Count I, regardless of the character of the tort, are

---

[6] In *Norman v. Insurance, supra,* the case principally relied upon by Travelers, the Supreme Court distinguished the case of *State Farm Mutual Ins. Co. v. Worthington,* 405 F.2d 683 (8th Cir. 1968), on the basis that the cause of action in *Worthington* did not involve an intentional assault and battery. The insured in *Worthington* fired a shotgun in the general direction of several boys when the insured thought they were stealing watermelons. One of the boys was killed. The facts in *Worthington* are closer to the allegations here. The Supreme Court distinguished *Norman* from *Worthington* in finding that "the firing of the gun by Norman and the wounding of Wilson as a result thereof were allegedly intentional and malicious." 218 Va. 718, 724.

within the language of the Travelers policy issued to Edward Morris. Paragraph 6 of the Travelers policy defines an "occurrence" to mean "an accident . . . which results . . . in bodily injury . . . ." Excluded from coverage, however, is any bodily injury "which is expected or intended by the insured." In determining what is an "accident" in the context of insurance coverage matters, courts do not give this term its ordinary meaning. Generally, an "accident" means a circumstance or event that is unusual and unexpected or fortuitous and unforeseen and occurs without fault. If that definition were applied to insurance policies, it would exclude coverage for negligence conduct, which of course would be absurd since coverage for actions for negligent acts is the principal reason why liability insurance is purchased. On the other hand, an accident does not include conduct which rises to the level of intentional conduct where the actor intends to cause harm to another. *Johnson v. Insurance Co, supra*, p. 723.

The precise issue here is whether an "accident" includes conduct committed by an actor where the actor is guilty of willful and wanton conduct but does not necessarily intend the harm that results from the conduct. The answer is found in the Travelers policy clause where it states that the policy does not apply to injuries which are "expected or intended" by the insured. In paragraph 7 of Count I of the Amended Motion for Judgment, Sheriff Morris alleges that when Edward Morris fired wildly outside, "Edward Morris should have realized, from his knowledge of existing circumstances and conditions, that there was a strong probability that his conduct might result in injury to another." There is no allegation here that the injuries were "intended."

However, the policy excludes coverage for acts committed where bodily injuries are "expected." Obviously injuries that are expected are different from injuries that are intended. To "expect" a happening is "To look forward to the probable occurrence of. To consider reasonable or due." *The American Heritage Dictionary of the English Language*, p. 252. Sheriff Morris contends that Edward Morris should have known there was a "strong probability that his wild shooting would cause injury to another. To this court, that is the same as saying that Edward Morris should have expected that his wild shooting would cause injury to Sheriff Morris or to anyone else who may have been in the line of fire. This court sees no difference between a probability of injury and an expectation of injury where the conduct is alleged to have been done wantonly or willfully.

The allegations in Count I of the Amended Motion for Judgment assert a claim of willful and wanton conduct alleged to have caused injuries to Sheriff Morris under circumstances where there was a strong probability that injuries would occur. This is not a claim covered by the liability policy. If injuries were probable or expected, then the language of the policy excludes coverage for such injuries.

Accordingly, the demurrer of Travelers is sustained.